IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                    CRIMINAL ACTION NO. 3:17-00058

DAVID LEE ZIRKLE

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant David Lee Zirkle's Motion to Suppress Evidence Obtained from Illegal Seizure of Mail Parcel. ECF No. 20. The Court held a hearing on the motion on August 22, 2017. Upon considering the arguments of the parties and the evidence presented, the Court **DENIES** Defendant's motion for the following reasons.

On November 23, 2016, United States Postal Inspector Robert A. DiDomenico received a tip that a large volume of express mail packages were being sent from various addresses in Michigan to 2422 Collis Avenue in Huntington, West Virginia. Inspector DiDomenico testified that, to his knowledge, the tip went from a mail carrier to a supervisor to him. Inspector DiDomenico was told the number of express mail packages being delivered to the address exceeded the number of packages being delivered to some businesses that ordinarily receive these types of packages and one package was addressed to someone who did not live there. Based upon the tip, Inspector DiDomenico placed a "Mail Watch" on the delivery address, so he would get a notice the next time the address was receiving a package. On the morning of December 9, 2016, notice was given that a package addressed to 2422 Collis Avenue was at the Huntington, West

Virginia, Post Office. Given this alert, Inspector DiDomenico promptly went to the Huntington Post Office early in the morning to inspect the package.

Upon examining the package, Inspector DiDomenico observed it was a Priority Mail Express Flat Rate parcel, with a handwritten label, and was from Michigan. Inspector DiDomenico testified that, based upon his training and experience, drug traffickers often used overnight, express mail because it has quick delivery and is easy to track. He also said that the majority of express mail packages have typed address labels because they are sent from business-to-business, not from person-to-person like the parcel at issue here. In addition, he testified that Michigan is a known as a source state for the shipment of drugs into West Virginia.

In light of his observations, Inspector DiDomenico ran a CLEAR[1] report as part of his investigation. "CLEAR is a law enforcement database that compiles public records, government and financial information, and public utilities for the purpose of aiding criminal investigators with locating and identifying suspects, witnesses, and missing persons." *Resp. of the United States to Def.'s Mot. to Suppress*, at 2 n.2, ECF No. 21. Upon running the report, the sender's Michigan address came back as a nonexistent.[2]

Given all this information, Inspector DiDomenico called a canine handler with the West Virginia State Police. Trooper First Class Kevin Williams brought a drug dog to the scene,

---

[1]CLEAR stands for Consolidated Lead Evaluation and Reporting.

[2]The package was addressed to "Debbie Zerkle [sic]," who is Defendant's deceased mother. It appears that investigators did not know at the time that Ms. Zirkle was dead.

and the dog positively alerted to the odor of drugs. Inspector DiDomenico then applied for a federal search warrant for the parcel. A warrant was issued at 11:47 a.m. that same day.

After getting the warrant, the package was opened, and it was found to contain approximately 30 grams of suspected heroin. A sample of the heroin was repackaged, and Inspector DiDomenico delivered it to Defendant. Defendant accepted and signed for the package.[3] Thereafter, officers executed a separate search warrant for 2422 Collis Avenue. When Officers entered the residence, Defendant was found holding the heroin in his hand.[4]

Defendant argues the package was unlawfully seized because Inspector DiDomenico lacked a reasonable and articulable suspicion that the package contained contraband when he removed it from the regular flow of commerce. Therefore, Defendant insists Inspector DiDomenico's exertion of dominion and control over the package constitutes an unreasonable seizure. Specifically, Defendant argues the fact the package had a handwritten label and originated from Michigan is innocuous because large volumes of innocent parcels have similar characteristics. Thus, Defendant contends these factors are simply insufficient to raise any reasonable and articulable suspicion that criminal activity is afoot. Likewise, Defendant asserts that the unadorned tip by postal employees that suspicious packages were being delivered to Defendant's address adds little, if anything, to the level of suspicion.

---

[3]The defendant testified the package was delivered around 2:30 p.m.

[4]Officers also found a similar package under Defendant's mattress. The United States represents that Defendant admitted the similar package was his and it contained heroin.

Although the package was addressed to "Debbie Zerkle [sic]," who is Defendant's deceased mother, the United States concedes that Defendant has standing to bring a challenge under the Fourth Amendment.[5] The Fourth Amendment, however, does not protect against all searches and seizures—only those that are "unreasonable." U.S. Const. amend. IV. With respect to the mail, it is well established that "[l]etters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy[.]" *United States v. Jacobsen*, 466 U.S. 109, 114 (1984). Although "warrantless searches of such effects are presumptively unreasonable," *id.* (footnote with citations omitted), an examination of a package's external features does not constitute a search under the Fourth Amendment. *United States v. Van Leeuwen*, 397 U.S. 249, 250–52 (1970); *see also United States v. Castellanos*, 716 F.3d 828, 849 (4th Cir. 2013) (citing *United States v. Hinton*, 222 F.3d 664, 675 (9th Cir. 2000), for the position that "there is no expectation of privacy in the address on a package"). Nevertheless, this Court must resolve whether the facts in this case were sufficient to raise a reasonable suspicion to briefly detain the parcel for investigative purposes. *See United States v. Kent*, 652 F. App'x 161, 165 (4th Cir. 2016) (unpublished) ("A package may be detained briefly for investigative purposes, but only if there is reasonable suspicion that it contains contraband." (citations omitted)).

In determining whether reasonable suspicion existed to detain the parcel, the Court must consider "the totality of the circumstances," and decide whether Inspector DiDomenico had "a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks and citation omitted). Under this umbrella, a combination of seemingly innocent factors may create reasonable suspicion. *Kent*, 652 F. App'x at

---

[5]It appears that investigators did not know at the time that Ms. Zirkle was dead.

165 (stating "innocent factors, taken together, may add up to reasonable suspicion" (citations omitted)). Additionally, in determining whether reasonable suspicion existed, the Court must "consider the 'facts within [Inspector DiDomenico's] knowledge' when the package was detained." *Id.* at 165 n.1 (quoting *United States v. Powell*, 666 F.3d 180, 186 (4th Cir. 2011) ("The reasonable suspicion standard is an objective one, so we examine the facts within the knowledge of [the officer] to determine the presence or nonexistence of reasonable suspicion." (citation and internal quotation marks omitted))).

In looking at the facts of this case, Inspector DiDomenico issued a "Mail Watch" after receiving a tip from other postal employees that suspicious packages were being sent from Michigan to Defendant's address. When the parcel at issue arrived at the Huntington Post Office, Inspector DiDomenico went to the Post Office early in the morning and examined the parcel. Based upon his first-hand observations and his training and experience, Inspector DiDomenico identified several factors that were unusual or otherwise were consistent with the drug trade. He specifically noted: (1) the parcel was sent overnight by Priority Mail Express, which is more expensive,[6] but allows for quick delivery and tracking for drug traffickers; (2) parcels sent by Priority Mail Express are most often sent from business-to-business, but this parcel was sent from person-to-person; (3) most of these parcels have typed labels, but this label was handwritten; and (4) the package originated from Michigan, which Inspector DiDomenico stated was a source state for many drugs coming into the area. After identifying these features, Inspector DiDomenico ran the addresses on the label through the CLEAR databank and found the return address was nonexistent. Although the Court does not give much weight to the fact the parcel was sent from

---

[6]The postage fee written on the outside of the parcel was $22.95.

Michigan and had a hand-written label, and only some weight to the fact the parcel was sent by Priority Mail Express person-to-person (rather than business-to-business), when these facts are combined with the initial tip from postal employees that an abnormally large volume of these types of packages were being delivered to the address, more than some businesses were receiving, and the fact the parcel had a fictitious return address, the Court finds from the totality of the circumstances that Inspector DiDomenico had sufficient articulable facts to establish reasonable suspicion for a brief delay to conduct further investigation.

With respect to the delay, the critical time period for this Court to consider is the time between when the parcel was stopped pursuant to the "Mail Watch" and when the dog indicated there were drugs inside.[7] It is clear from the evidence that this time period was very brief. Inspector DiDomenico testified that, after he was alerted a parcel had arrived at the Huntington Post Office, he went to the Post Office early in the morning, examined the outside of the package, ran the CLEAR report, and called the West Virginia State Police. Inspector DiDomenico stated it only took somewhere between thirty and sixty minutes for the canine unit to arrive at the Post Office.

Inspector DiDomenico's testimony is consistent with other evidence presented. Specifically, the outside of the parcel had a "Scheduled Delivery Time" of "12 noon." The Magistrate Judge issued the warrant at 11:47 a.m. Therefore, Inspector DiDomenico had to have

---

[7]Once the dog alerted on the parcel, the reasonable suspicion standard fell by the wayside because there was then probable cause to search. *See Florida v. Harris*, 568 U.S. 237, 246–47 (2013) ("If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search.").

conducted his preliminary investigation, got the State Police to arrive at the scene with the drug dog, and gave the dog the opportunity to sniff the parcel, while still having enough time for him to apply for and be issued a warrant before the scheduled delivery time.

Based upon these facts, the Court finds the brief seizure of the parcel was not unreasonable, and there was no violation of the Fourth Amendment. Accordingly, the Court **DENIES** Defendant's Motion to Suppress. ECF No. 20.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER:        October 20, 2017

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE